UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| ELLIOTT D. GOODIN, | NO: 2:15-CV-0218-TOR |
|---|---|
| Plaintiff, | |
| v. | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| DR. FLOURA and DR. CRISP, | |
| Defendants. | |

BEFORE THE COURT is Defendants' Motion for and Memorandum in Support of Summary Judgment (ECF No. 27). This matter was submitted for consideration without oral argument. The Court—having reviewed the parties' complete briefing, the record, and files therein—is fully informed. For the following reasons, the Court grants Defendants' motion.

//

//

//

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 1

## BACKGROUND

Plaintiff Elliott D. Goodin ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, is a patient at Eastern State Hospital. ECF Nos. 14; 16 at 2; 28 at 1. Plaintiff filed his Complaint in this action on October 30, 2015. ECF No. 16. The Court construes Plaintiff's Complaint as alleging the deprivation of Plaintiffs' right to adequate medical care in violation of 42 U.S.C. § 1983. *See id*. at 3-4. Defendants move for summary judgment on all claims. ECF No. 27. For the reasons discussed below, the Court grants Defendants' motion.

## FACTS

The following are the undisputed material facts unless otherwise noted. Because Plaintiff failed to file any opposing statement of facts, Defendants' proffered facts are deemed admitted.

Plaintiff was admitted to Eastern State Hospital on August 11, 2014, pursuant to an Order of Acquittal by Reason of Insanity and Order of Commitment from Pierce County on a charge of second degree murder.[1] ECF Nos. 28 at ¶ 1; 29

---

[1] The Court acknowledges that Plaintiff has filed several letters attaching a release notice from Western State Hospital, dated August 11, 2014. ECF Nos. 34 at 4-5; 35 at 1-2. Plaintiff requests that the Court "comply with [the] order" alleging "false imprisonment." *Id.* Plaintiff's request is not properly before the

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 2

at 4-13; 31 at ¶ 1. Plaintiff was assigned to a locked unit for patients who are involuntarily committed to the hospital as a result of criminal charges resulting in a finding of not guilty by reason of insanity. ECF Nos. 28 at ¶ 2; 29 at 4-13.

Plaintiff has had an implanted pacemaker device for approximately eight years. ECF Nos. 28 at ¶ 4; 29 at 15-20; *see also* ECF No. 16 at 4. Plaintiff alleges that he received a card from his cardiologist stating that he should not walk under metal detectors due to interference with his pacemaker. ECF Nos. 16 at 3; 28 at ¶ 6; 29 at 22. Eastern State Hospital's policy and procedures require its patients who leave the forensic unit to pass through a metal detector or undergo a hand or wand search before reentering the forensic unit for safety and security reasons. ECF Nos. 28 at ¶ 3; 31 at ¶ 5.

On August 26, 2014, Plaintiff refused to pass through a metal detector at Eastern State Hospital because of Plaintiff's belief that the metal detector would damage or interfere with his pacemaker. ECF Nos. 28 at ¶ 5; 29 at 22; 31 at ¶ 6.

---

Court in this matter; accordingly, the Court will not consider it at this time. However, for purposes of Defendants' instant motion, the Court finds that Plaintiff was, in fact, released from Western State Hospital to the care of Eastern State Hospital on August 11, 2014. ECF No. 29 at 15-20.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 3

Instead of requiring Plaintiff to walk through the metal detector, Plaintiff was searched by a hand wand scanner. ECF Nos. 28 at ¶¶ 5, 7; 29 at 22.

On August 27, 2014, Defendant Thomas Crisp ("Dr. Crisp"), Plaintiff's primary care physician at Eastern State Hospital, consulted and confirmed with Rockwood Heart and Vascular Center that passing through a metal detector would not interfere with Plaintiff's pacemaker. ECF Nos. 28 at ¶ 8; 29 at 24; 31 at ¶¶ 1, 7. That same day, Dr. Crisp discontinued use of the hand wand scanner and, instead, ordered Plaintiff to pass through the metal detector. ECF Nos. 16 at 3; 28 at ¶ 10; 29 at 22, 24. Despite assurances by Dr. Crisp that the metal detector would not adversely affect his pacemaker, Plaintiff continued to refuse to comply. ECF Nos. 28 at ¶ 11; 29 at 26; 31 at ¶ 7. As a result, Plaintiff was physically searched at each security screening point thereafter. ECF Nos. 28 at ¶ 12; 29 at 26.

Nearly seven months later, Plaintiff received a letter dated March 17, 2015, from Boston Scientific Cardiac Rhythm Management, Plaintiff's pacemaker vendor, enclosing a travel card and instructing Plaintiff to present the card to airport security personnel and alert personnel not to use security wands over his implanted device. ECF Nos. 28 at ¶¶ 13-14; 29 at 28-29, 31. Specifically, the travel card provides that "[s]ecurity alarms may be triggered when walking through security gates but the implanted device will not be adversely affected." *Id.* Following receipt of the letter and travel card, Plaintiff continued refusing to walk

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 4

through the metal detector claiming that the machine would adversely affect his pacemaker. ECF Nos. 28 at ¶ 15; 29 at 31; 31 at ¶ 7.

Defendants contend that the metal detector did not damage or interfere with Plaintiff's pacemaker and that Plaintiff did not suffer any medical issues or ill effects from passing through the metal detector. ECF No. 28 at ¶ 16; 31 at ¶ 8. In response, Plaintiff's unverified opposition references "instances where [Plaintiff had] chest pain" and, on occasions, "was even administered nitroglycerin." ECF No. 34 at 2. In contrast, Plaintiff also concedes that he "never had chest pain or any other problems." *Id.* Although the Court is unable to ascertain whether Plaintiff avers that he suffered chest pain requiring nitroglycerin while committed at Eastern State Hospital, binding precedent precludes the Court from considering either of Plaintiff's assertions because his contentions are neither verified, nor supported by affidavit.[2]

In addition, Plaintiff alleges that Defendant Kamaljit Floura ("Dr. Floura"), Eastern State Hospital's Medical Director, prescribed a Thorazine shot to Plaintiff,

---

[2] *See* Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (requiring the non-moving party to "go beyond the [unverified] pleadings" and submit admissible evidence supporting its position). Plaintiff's response brief, ECF No. 34, does not meet *Celotex*'s requirement. *Id.*

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 5

despite a noted allergy in Plaintiff's chart.  ECF No. 16 at 4.  Plaintiff's admission records indicate that he is allergic to Thorazine (Chlorpromazine).  ECF Nos. 28 at ¶ 17; 29 at 17.  Specifically, on December 27, 2014, Plaintiff threatened harm to staff and peers by exhibiting aggressive, violent behavior.  ECF Nos. 28 at ¶ 18; 29 at 33; 30 at ¶ 6.  During this episode, Defendants admit that Dr. Floura mistakenly prescribed Thorazine to Plaintiff as needed for agitation.  *Id*.  Dr. Floura was not Plaintiff's regular care provider and was unaware that Plaintiff is allergic to Thorazine. ECF Nos. 28 at ¶ 18; 30 at ¶ 2, 7.  However, the staff member charged with administering Thorazine was aware of Plaintiff's reported allergy and, therefore, substituted Seroquel for Thorazine. ECF Nos. 28 at ¶ 19; 29 at 35; 30 at ¶ 8. In other words, Thorazine was never administered to Plaintiff.  ECF Nos. 28 at ¶ 19; 30 at ¶ 8.

## DISCUSSION

**A. Standard of Review**

Summary judgment may be granted to a moving party who demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 36(a).  The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex*, 477 U.S. at 323.  The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact.  *See*

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 6

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. For purposes of summary judgment, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed." Fed. R. Civ. P. 56(e)(2); *see also* LR 56.1(d) ("[T]he Court may assume that the facts as claimed by the moving party are admitted to exist without controversy except as and to the extent that such facts are controverted by the record set forth [in the non-moving party's opposing statement of facts]").

A *pro se* litigant's contentions offered in motions and pleadings are properly considered evidence "where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [a litigant] attest[s] under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (allegations in a *pro se* plaintiff's verified pleadings must be considered as evidence in opposition to summary judgment). Conversely, unverified pleadings are not treated as evidence. *Contra Johnson v. Meltzer*, 134 F.3d 1393, 1399-400 (9th Cir. 1998) (verified motion swearing that statements are "true and correct" functions as an affidavit); *Schroeder v. McDonald,* 55 F.3d 454, 460 n.10 (9th Cir. 1995)

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 7

(pleading counts as "verified" if drafter states under penalty of perjury that the contents are true and correct).

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248. A dispute concerning any such fact is "genuine" only where the evidence is such that the trier-of-fact could find in favor of the non-moving party. *Id.* "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks and alterations omitted); *see also First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968) (holding that a party is only entitled to proceed to trial if it presents sufficient, probative evidence supporting the claimed factual dispute, rather than resting on mere allegations). Moreover, "[c]onclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *see also Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment.").

In ruling upon a summary judgment motion, a court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to the non-

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 8

moving party, *Scott v. Harris*, 550 U.S. 372, 378 (2007), and only evidence which would be admissible at trial may be considered, *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). *See also Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) ("[I]n ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." (internal quotation marks and brackets omitted)). Finally, although *pro se* pleadings are held to less stringent standards than those prepared by attorneys, *pro se* litigants in an ordinary civil case should not be treated more favorably than parties with attorneys of record. *See Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986).

**B. Section 1983 Claims**

Based on the Court's interpretation of Plaintiff's Complaint, the Court discerns two potential causes of action under 42 U.S.C. § 1983 related to the deprivation of Plaintiffs' right to adequate medical care. *See* ECF No. 16 at 3-4. First, Plaintiff alleges that Dr. Crisp required him to undergo metal detector security screening despite Plaintiff's concerns about interference with his

//

//

//

//

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 9

pacemaker. *Id.* Second, Plaintiff contends that Dr. Floura incorrectly prescribed Thorazine notwithstanding Plaintiff's reported allergy.³ *Id.*

A section 1983 cause of action may be maintained "against any person acting under color of law who deprives another 'of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 887 (9th Cir. 2003) (quoting 42 U.S.C. § 1983). The rights guaranteed by section 1983 are "liberally and beneficently construed." *Dennis v. Higgins*, 498 U.S. 439, 443 (1991) (quoting *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 684 (1978)).

Section 1983 requires a claimant to prove "(1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632–33 (9th Cir. 1988).

---

³ In response to Defendants' summary judgment motion, Plaintiff's response purports to assert a new cause of action for negligence, ECF No. 34 at 1. Yet, mere negligence does not trigger the protections of the Fourteenth Amendment and, therefore, does not support a claim under 42 U.S.C. § 1983. *Daniels v. Williams,* 474 U.S. 327, 330-31 (1986); *Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986) (negligence is not actionable under section 1983).

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 10

"A person deprives another 'of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which the plaintiff complains.'" *Id.* at 633 (brackets omitted) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). Moreover, the "inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Id.*

Defendants contend, and the Court agrees, that they acted under color of state law while serving as Plaintiff's health care providers at Eastern State Hospital. Therefore, this case turns on the second inquiry: whether Defendants violated Plaintiff's constitutional rights.

**C. Qualified Immunity**

Against this backdrop, Defendants are entitled to a qualified immunity analysis on Plaintiff's section 1983 claims. Qualified immunity shields government actors from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 11

officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.*

In evaluating a state actor's qualified immunity assertion, a court must determine (1) whether the facts, viewed in the light most favorable to the plaintiff, show that the defendant's conduct violated a constitutional right; and (2) whether the right was clearly established at the time of the alleged violation such that a reasonable person in the defendant's position would have understood that his actions violated that right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson*, 555 U.S. at 227.  To determine whether a right is "clearly established," courts consider the following:

> [The contours of the right] must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (internal citations omitted).  A court may, within its discretion, decide which of the two prongs should be addressed first in light of the particular circumstances of the case. *Pearson*, 555 U.S. at 236.  If the answer to either inquiry is "no," then the defendant is entitled to qualified immunity and may not be held personally liable for his or her conduct. *Glenn v. Wash. Cnty.*, 673 F.3d 864, 870 (9th Cir. 2011).

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 12

Here, because Plaintiff's section 1983 claims and Defendants' assertion of qualified immunity both hinge on whether Defendants' conduct violated Plaintiff's constitutional rights, the Court analyzes section 1983 and qualified immunity in tandem. The Court construes Plaintiff's Complaint to allege that Defendants failed to provide Plaintiff with adequate medical care while in state custody regarding his pacemaker device and Thorazine allergy. ECF No. 16 at 3-4.

As a preliminary matter, Plaintiff was found not guilty by reason of insanity and committed to the custody of the state at Eastern State Hospital. *See* ECF Nos. 28 at ¶ 1; 29 at 4-13; and 31 at ¶ 1. Although Plaintiff is lawfully in state custody, he is not a pretrial detainee or a "prisoner" subject to punishment by the state; as a result, Plaintiff is entitled to more protection than that provided by the Eighth Amendment. *See e.g., Jones v. United States,* 463 U.S. 354, 368 (1983) ("The purpose of commitment following an insanity acquittal, like that of civil commitment, is to treat the individual's mental illness and protect him and society from his potential dangerousness."); *Youngberg v. Romeo,* 457 U.S. 307, 315 (1982) (involuntarily committed persons retain substantive liberty interests, including the right to adequate medical care); *Ammons v. Wash. Dep't of Soc. & Health Servs.,* 648 F.3d 1020, 1027 (9th Cir. 2011) ("Involuntarily committed patients in state mental health hospitals have a Fourteenth Amendment due process right to be provided safe conditions . . . ."); *Oregon Advocacy Ctr. v. Mink,* 322

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 13

F.3d 1101, 1121, n.11 (9th Cir. 2003) (deliberate indifference is useful in the substantive due process context, but does not solely govern the analysis). Accordingly, the Court analyzes Plaintiff's claims under the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment's protection against cruel and unusual punishment.

The Supreme Court has determined the proper standard for analyzing whether a state has adequately protected the rights of involuntarily committed patients. *Youngberg v. Romeo*, 457 U.S. at 323. Under the Fourteenth Amendment, a decision made by a professional regarding the medical care of persons who are involuntarily committed are deemed "presumptively valid." *Id.* It is only when the professional's decision is "a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment" that liability may be imposed. *Id.*

The Ninth Circuit has articulated that the "*Youngberg* professional judgment standard" requires that "in the face of known threats to patient safety, state officials may not act (or fail to act) with conscious indifference, but must take adequate steps in accordance with professional standards to prevent harm from occurring."

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 14

*Ammons*, 648 F.3d at 1030 (internal quotation marks omitted).[4] Importantly, "the Constitution only requires that the courts make certain that professional judgment in fact was exercised. It is not appropriate for the courts to specify which of several professionally acceptable choices should have been made." *Youngberg*, 457 U.S. at 321 (internal quotation marks omitted).

Here, Plaintiff argues that Dr. Crisp's decision to require Plaintiff to pass through a metal detector violates his constitutional rights. ECF No. 16 at 3. Yet, Plaintiff cites nothing in support of his argument, other than his bare assertion that his "cardiologist in Tacoma, WA gave [him] a card . . . stating [he is] not to walk under the medal [sic] detector under no circumstances." *Id*. Plaintiff has failed to produce *any* evidence supporting Plaintiff's contention that metal detectors may adversely affect his pacemaker. The Court has been presented with no testimony

---

[4] The *Youngberg* professional judgment standard "differs from the 'deliberate indifference' standard used in Eighth Amendment cruel and unusual punishment cases, in that persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Mitchell v. Washington*, 818 F.3d 436, 443 (9th Cir. 2016) (internal quotation marks, alterations, and emphasis omitted).

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 15

or evidence from Plaintiff's cardiologist, or medical records evincing injuries sustained from passing through the metal detector. Similarly, Plaintiff has produced no evidence to suggest that Dr. Crisp's decision was unreasonable, or that his decision constitutes a "substantial departure from accepted professional judgment, practice, or standards." *Youngberg*, 457 U.S. at 323.

To the contrary, the undisputed evidence demonstrates that when Plaintiff advised Dr. Crisp of his apprehension concerning his pacemaker, Dr. Crisp promptly consulted with a medical professional at Rockwood Heart and Vascular Center the next day to confirm that the metal detector would not affect Plaintiff's pacemaker. ECF Nos. 28 at ¶ 8; 29 at 24; and 31 at ¶¶ 1, 7. Moreover, the letter from Plaintiff's pacemaker vendor supports Dr. Crisp's findings that "the implanted device will not be adversely affected." ECF Nos. 28 at ¶¶ 13-14; 29 at 28-29, 31. Despite Dr. Crisp's reassurance and the pacemaker vendor's confirmatory missive, Plaintiff continued to refuse to pass through the metal detector alleging a violation of his rights. ECF Nos. 28 at ¶ 15; 29 at 31; 31 at ¶ 7. Plaintiff's mere allegation and speculation are not sufficient to establish genuine issues of material fact warranting his claims to proceed to trial. *See Nelson*, 83 F.3d at 1081–82. The Court finds that Dr. Crisp is entitled to summary judgment.

Similarly, the Court finds that Plaintiff's claim against Dr. Floura must also fail because there is simply is no evidence in the record from which a reasonable

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 16

factfinder could conclude that Dr. Floura stripped Plaintiff of any constitutional right.  Defendants concede that Dr. Floura mistakenly prescribed Thorazine to Plaintiff after Plaintiff exhibited aggressive behavior and violence.  ECF Nos. 16 at 4; 28 at ¶ 18; 29 at 33; 30 at ¶ 6.  Likewise, it is undisputed that Plaintiff's admission record indicates that he is allergic to Thorazine.  ECF Nos. 16 at 4; 28 at ¶ 17; 29 at 17.  That Dr. Floura mistakenly prescribed Thorazine, however, is not sufficient to show that Dr. Floura's decision to do so was unreasonable.  Rather, Dr. Floura submitted sworn testimony that he is "only called for code situations such as a 'code gray' where a patient is an imminent danger to others or themselves or if a patient is in the seclusion room and continues to fight and display aggression." ECF No. 30 at ¶ 4.  Unaware of Plaintiff's allergy to Thorazine and confronted with Plaintiff's violent episode, Dr. Floura prescribed Thorazine "to be given as needed for aggression."  *Id.* at ¶¶ 6-7.  Yet, Thorazine was never actually administered to Plaintiff.  ECF Nos. 28 at ¶ 19; 30 at ¶ 8.  Plaintiff never suffered an injury.  Further, Plaintiff's argument that he now has a fear of needles because of Dr. Floura's conduct is unsupported and not dispositive.  ECF No. 34 at 1.

      Finally, no inference can reasonably be drawn to indicate that Dr. Floura acted with conscious indifference.  *See Ammons*, 648 F.3d at 1030.  Rather, the evidence clearly shows that Dr. Floura prescribed Thorazine in taking "adequate steps in accordance with professional standards to prevent harm from occurring" to

staff and peers. *Id.* The Court finds that Plaintiff's unyieldingly asserted, unsupported argument that "no doctor can write a prescription [sic] with out [sic] looking at your alergies [sic]" is unpersuasive and not logically sound. ECF No. 35 at 3. Plaintiff has failed to present a genuine dispute to rebut the presumption that Dr. Floura's professional judgment was valid. *Youngberg*, 457 U.S. at 323. Under the circumstances, the Court finds that Dr. Floura exercised professional judgment. Indeed, no trier-of-fact, based on the evidence presented, could find otherwise. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248 (explaining that a dispute about a material fact is "genuine" if the evidence is such that a trier-of-fact could return a verdict for the nonmoving party).

Consequently, the Court concludes that Plaintiff has failed to present any evidence sufficient to rebut the *Youngberg* professional judgment standard as to Dr. Crisp's and Dr. Floura's conduct. Accordingly, the Court finds that because Plaintiff's due process rights were not violated, Defendants Dr. Crisp and Dr. Floura are entitled to qualified immunity, and summary judgment is appropriate as to all of Plaintiff's section 1983 claims.

Pursuant to 28 U.S.C. § 1915(a)(3), "[a]n appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith." The good faith standard is an objective one, and good faith is demonstrated when an individual "seeks appellate review of any issue not frivolous." *See Coppedge v.*

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 18

*United States*, 369 U.S. 438, 445 (1962). For purposes of 28 U.S.C. § 1915, an appeal is frivolous if it lacks any arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

**ACCORDINGLY, IT IS ORDERED:**

1. Defendants' Motion for Summary Judgment (ECF No. 27) is **GRANTED**.

2. Plaintiff's in forma pauperis status is **REVOKED.**

3. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal of this Order would not be taken in good faith and would lack any arguable basis in law or fact.

4. The District Court Executive is hereby directed to enter this Order, provide copies to Plaintiff and Defendants' counsel, enter **JUDGMENT** for Defendants on all claims with prejudice, and **CLOSE** the file.

**DATED** September 21, 2016.

THOMAS O. RICE
Chief United States District Judge

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 19